# Kemmerer *versus* Edelman.

1. In an action for an injury to the plaintiff's land alleged by him to have been caused by a mill-dam owned by the defendants, and which was erected in 1832 ; but which was alleged by defendants to have been occasioned by an older dam erected about thirty years before, the Court submitted to the jury whether the dam last erected was a nuisance and the notice to remove it reasonable ; and instructed the jury that the plaintiff could not recover if the overflow was caused by the *old* dam or by natural causes, such as the narrowing of the channel ; but that if there had been the slightest flooding back on the plaintiff's land caused by the dam owned by the defendants, they were liable to damages, nominal if slight, compensatory if substantial. *Held*, that in such submission and charge there was no error.

2. It is too late to object in this Court to a question put to a witness on the trial of a cause as being *a leading question*, when it does not appear from the record that such objection was made to it at the examination, when its form might have been changed. The question "did Peter Rhoades tell you where that corner was," was not a leading question.

3. If the declarations of a deceased surveyor in relation to a survey made by him were objectionable for want of the production of the draft of the survey referred to by the witness, the error was cured by the subsequent production of the draft.

[Kemmerer *v.* Edelman.]

ERROR to the Common Pleas of *Lehigh county.*

This was an action on the case by George Kemmerer *v.* Charles Edelman and William Edelman, to recover damages done to the land and water-power of the plaintiff, by the swelling back of the water of Lehigh Creek, alleged by the plaintiff to have been occasioned by a dam erected in 1832, and which was continued by the defendants; but which was attributed by the defendants to other causes.

The declaration contained two counts: the first was for the erection of the dam, whereby the waters of the creek were caused to flow back, &c.; and the second was for the *continuance* of the alleged nuisance.

George Kemmerer, the plaintiff, claimed above 61 acres of land, lying on the Little Lehigh Creek, under a conveyance to him on April 1, 1844. It lay *above* the land of the defendants.

The defendants owned a tract of 3 acres and 36 perches, on which was a mill, their land lying on the creek. In 1828, a dam was erected on it by Samuel Fried, the then owner. In 1832, this dam was rebuilt by Jacob Edelman, the father of the defendants, and was stated to have been raised 2½ feet higher than it was before. This new dam was continued by the defendants.

On the 29th March, 1849, a notice, signed by the plaintiff, was served on the defendants, alleging an injury caused by their dam, and requiring the defendants, within a reasonable time, to reduce or lower their dam, so that the cause of the injury might be removed; otherwise, the plaintiff would seek redress by law. This not being done, suit was brought on 21st April following.

The defendants endeavored to show that the swelling back on the plaintiff's land was occasioned by *an old dam* below plaintiff's line about ten or fifteen perches; and that there was no swelling over the land of plaintiff at the common stage of water; that the bed of the stream had been altered; that the creek had become deeper and narrower by reason of the grass growing along its banks. Defendants also endeavored to prove that on the south side of the creek, the plaintiff did not own any land; and for this purpose gave in evidence a draft made by Peter Rhoades, and his declarations as to where the corner was, &c. Rhoades had been a surveyor, and was dead at the time of the trial of this case.

On the trial, Solomon Keck, a witness, was asked: "Did Peter Rhoades tell you where that corner was?" It appeared from the bill of exceptions, that the question was objected to generally. The objection was overruled, and exception was taken. The witness testified that Peter Rhoades was dead; that he (the witness) was along when Peter Rhoades ran the line; "He told me the corner was in the creek;" they ran the line to the creek, and said the corner was in the creek, but how far in it Rhoades said he did

[Kemmerer *v.* Edelman.]

not know.  "It was at the same time he told me the corner was in the creek."  He further said, that Rhoades made the survey for him, and left the draft with him; and that he believed the draft was in the Court-house.

The draft was soon after produced and shown to the jury.

It was testified that the old dam existed in 1811.  With the exception of part of the foundation, it had been torn away.  On the part of the plaintiff it was contended, that this old dam could not have caused the injury complained of; but, on the other side, it was alleged, that what remained of it was an obstruction to the stream.

JONES, President Judge, charged that the defendants, not having erected the dam, were responsible, if at all, only for its continuance.  That it was necessary that the plaintiff should have given to the defendants notice before bringing suit.  He thought that the notice, served more than three weeks before suit, was sufficient, considering the season of the year; but he submitted its reasonableness to the jury.  He further charged, that if the water was flooded back by the "old meadow dam, and has not been raised by the subsequent erection of the mill-dam, the plaintiff would have nothing to complain of.  That old dam seems to have been a very ancient erection."

So, too, if the creek has been narrowed by the grass growing into its sides, and by the deposition of mud, &c., among that grass, and the water has been raised gradually by the contracting of the space within which it flows—so that the flooding back, if any, is attributable to natural causes and not to the Edelman dam —the plaintiff could not recover.  "But if, on the other hand, there has been any, the slightest flooding back of the waters, caused by that dam since it has been in possession of the defendants, for that the plaintiff could recover."

He further observed, that if the jury found for the plaintiff, they should give such damages as would compensate him for any substantial injury sustained; if the injury were slight, nominal damages were sufficient.

Verdict was rendered for defendants.

It was assigned for error that the Court erred in regard to the notice; in the subsequent part of the charge stated; and in the charge as to damages.  5. In allowing Solomon Keck to answer the question which was objected to.  It was argued that the question was leading.  6. In admitting his testimony.

*Bridges* and *Davis*, for plaintiff in error.

*Goepp* and *King*, contrà.

[Kemmerer *v.* Edelman.]

The opinion of the Court was delivered by

BLACK, C. J.—This was an action on the case for continuing a dam, whereby the water was swelled back on plaintiff's land. The dam complained of was erected in 1832. The defendant alleged that the overflow was in fact caused by another dam built about the beginning of the present century, or by the gradual narrowing of the channel where it passes through the plaintiff's land, and not by the dam erected in 1832. The plaintiff, however, gave the defendant notice to take down the last-mentioned dam, and upon its not being complied with, commenced the present action three weeks afterwards.

The charge was a model of brevity and comprehensiveness. It left to the jury the questions whether the dam was a nuisance, and the notice to take it down reasonable; and then instructed them that the plaintiff could not recover if the overflow was caused by the old dam, or by natural causes such as the narrowing of the channel. But the Court said that the slightest flooding back caused by the dam complained of, would entitle the plaintiff to damages, nominal if the injury was very slight, compensatory if substantial.

It is impossible to say that there is anything wrong in all this, though every word of it is assigned for error. The speciousness of the plaintiff's argument made us pause for a moment on one point. It seemed at first that the Court had referred to the old dam, as giving the defendant a prescriptive right to pen back the stream. This it did not since it was built at a different place, for another purpose, and all actual use of it had been discontinued before that now used was built or thought of. But it stands where it did fifty years ago, and the Court mentioned it as being the possible cause of the trouble charged on the dam of 1832. Surely an action like this ought to be defeated if the facts satisfy the jury that no injury was done, except by a structure not mentioned in the notice or the *narr.*, which has existed for half a century without complaint, and to the abatement of which, if demanded, the defendant would probably have no objection. It is said, however, that there was no evidence of this. There was some: it was not the business of the Court to say how much. Several witnesses declared that the water was raised by the old dam; and besides, the jury viewed the place with their own eyes.

It is true that no alteration in the channel above could increase the absolute height of the pool made by the dam. But the Court permitted the jury thus to explain if they saw proper, not the height of the mill pool, but other swelling of the water alleged by the defendant to have no connexion with the dam, and by the plaintiff attributed (perhaps falsely) to that cause. When a channel, where the stream is totally unaffected by a dam, loses its capacity by becoming too narrow or not deep enough to carry off

[Kemmerer *v.* Edelman.]

the volume of water which previously flowed through it, the water must either be swelled back back-above, find another channel, or overflow its banks and spread out in a sheet over the contiguous level.   If such was the case here, it was proper enough to say that the defendant was not liable for the injury which it caused to the plaintiff's land.

The exception to the admission of evidence has nothing in it. The question is not a leading one; and if it were, no advantage of that could be taken here unless it appears by the record that the specific objection was made at the time, so that the examining party might have an opportunity to change the form of his interrogatory.   It is not worth while to inquire now whether the declarations of a deceased surveyor can be given in evidence to establish an old corner, without producing the draft, since the draft was produced immediately afterwards, and thus cured the error, if it was one.

Judgment affirmed.