Commonwealth *v.* Boyance, Appellant.

Submitted June 15, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*James J. Phelan, Jr.,* for appellant.

*Ward F. Clark,* Assistant District Attorney, and *Paul R. Beckert,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., September 13, 1962:

Appellant was charged with the offenses of burglary, larceny, receiving stolen goods, and conspiracy for offenses allegedly committed in Pennsylvania, and also charged with the possession of burglary tools, bringing stolen property into the State, and conspiracy for offenses allegedly committed in New Jersey.

At the trial, the Commonwealth contended that during the latter part of June and the early part of July, 1961, the appellant, in company with other persons, forced entry into the Franklin Hardware and Supply Company and stole cash and blank imprinted payroll checks, forced entry into the R. Funk and Company, where payroll checks and petty cash from the sale of coke were taken, forced entry into Sommer Maid Creamery, Inc., where money was taken from coke and coffee machines, forced entry into Sommer Manufacturing Company, where cash was taken, and forced entry into Metco Manufacturing Company, wherein petty

cash and money from a coke machine were stolen. Representatives of each company testified to having observed indications that their business establishments had been burglarized, and described what was missing. Representatives of three companies located in New Jersey, C. & D. Motors, Volk Motors, and D. & W. Blueprint Company, also testified to evidence that their business establishments had been burglarized, and described what had been taken. A Pennsylvania State Police officer testified that during the early morning hours of July 13, 1961, he, and a Bensalem Township police officer observed the defendant when he emerged from a car which they had earlier observed leaving the defendant's home, without the defendant, but occupied by John Malpass and Thomas Redd. The officers followed the car to Trenton, New Jersey, where it picked up two other men. They followed the car to Volk Motors and observed three men leave the car and go behind the building, returning hurriedly ten or fifteen minutes later, one of the men carrying a checkwriting machine. The police then followed the defendant and his companions to the New Jersey Plumbing Supply House, where they pulled into the driveway out of sight. Upon their emergence, the police followed the car to Pop's Pizza House, which is where the police first identified the defendant when he entered the restaurant while the other three headed for an adjacent used car lot. Defendant returned in five minutes and resumed his position in the driver's seat. The police continued to follow the car and observe the actions of the occupants until they lost the car in traffic. They waited at the toll bridge at Morrisville where they again observed the car with John Malpass driving, accompanied only by Thomas Redd, and preceded by another automobile containing the defendant.

After observing the two cars, the officers radioed ahead for a search warrant, and after being joined by

other police officers who had obtained the search warrant, proceeded to the home of the defendant. After entry had been refused, the police officers forcibly entered the house and found the defendant, Roberts, and Redd, along with the stolen checkwriter, checks and cash. The defendant and Roberts were hiding under a pile of clothing or blankets. Subsequently, they found Malpass hiding in another room.

The Commonwealth then presented the testimony of four individuals also involved in the alleged crimes. John David Roberts testified that he had pleaded guilty to the five burglaries in Pennsylvania, and that the defendant drove the car, instructed him what to look for, and what to do. He also testified as to the occurrences in New Jersey and that the defendant was along and involved on those occasions. The three others corroborated the testimony of Roberts, and their accounting of the events were substantially the same. The jury found the defendant guilty on all counts, and he was sentenced for a period of not less than five years nor more than ten years on each count, the sentences to run concurrently. This appeal followed.

Defendant, in his brief, cites a long list of questions he claims were leading questions constituting reversible error, and apparently bases part of his argument on the fact that he was not represented by counsel of his own choice at a preliminary hearing. Prior to the trial he rejected an offer of the services of the Public Defender's office. The record clearly shows the lower court's thorough explanation of his rights and offer to appoint counsel to represent him. Upon his refusal of counsel, it is clear from our examination of the entire voluminous record that the lower court accorded the defendant wide latitude in conducting his own defense, particularly in cross-examination.

The majority of the questions set forth in defendant's brief, when read in context with the surrounding

notes of testimony, are not leading questions. If any of them may be so interpreted, the record fails to show any objection made at the time.

Allowing a leading question to be asked is not ground for awarding a new trial unless specific objection is made at the trial below so as to allow counsel to change the form of the question. *Kemmerer v. Edelman*, 23 Pa. 143. Objections that questions were leading cannot be first raised on appeal. *McCarthy v. General Electric Co.*, 293 Pa. 448, 143 A. 116.

Appellant further contends that there was reversible error in certain alleged conversation between the trial judge and the district attorney, the judge's remarks to the defendant, and the court's failure to sequester witnesses.

There is nothing in the record to indicate the nature of the alleged conferences and no objection was made at the time. If whatever was said had any bearing on the trial, it was not within the hearing of the jury, and since the trial judge and the district attorney were giving every possible assistance to the appellant in the conduct of his defense, it would be unreasonable to assume that these side-bar conferences were prejudicial in any way.

The several remarks attributed to the trial judge as constituting error were completely justified by the actions of the appellant, and were necessary to maintain order during the course of the trial. Appellant had a tendency to argue with witnesses while he was cross-examining, testify when he was asking questions, exceed the scope of cross-examination, and indulge in courtroom histrionics. The record clearly shows the restraint under which the trial judge held himself in allowing the appellant to wander far from strict trial procedure.

The defendant made no motion for the sequestration of witnesses, and the court was under no duty to ad-

vise him as to his right to have the witnesses seques- tered. The sole purpose of separating witnesses is to prevent the shaping of testimony to correspond with that given earlier in the trial. *Commonwealth v. Ross,* 190 Pa. Superior Ct. 145, 152 A. 2d 778. There is noth- ing shown in this record which necessitated separating the witnesses. Not one of the witnesses had anything to gain by alteration of his recollection of the facts to which he was testifying, and in the very unlikely possi- bility that any of the witnesses wished to compare his story with that of another there was plenty of oppor- tunity to do so prior to the trial, since the witnesses were all known to each other. Regardless, sequestra- tion of witnesses is a matter always discretionary with the trial court. *Commonwealth v. Nestor,* 183 Pa. Su- perior Ct. 350, 132 A. 2d 369; *Commonwealth v. God- frey,* 177 Pa. Superior Ct. 640, 112 A. 2d 434.

There is nothing in the record to substantiate the appellant's claim that any Commonwealth witnesses perjured themselves during the course of the trial. Ap- pellant contends that he had been "framed", and that the alleged co-conspirators perjured themselves to place him at the scene of the crime. He attempts to substan- tiate this by claiming that four persons had been told by the co-conspirators that the appellant had been framed. He then states that this information is not a part of the record. Therefore, by his own admission, it cannot be argued on appeal. Furthermore, if this contention has any merit, it seems unusual that the appellant did not mention it at the trial, put forth a defense, or have the four persons subpoenaed.

Lastly, the appellant contends that the court erred in denying his motion to suppress the evidence on the ground that the person ordering the search was not certain that a crime had been committed. However, the record amply demonstrates that a crime had been committed, that the appellant was the leader of the

conspiracy which committed the offenses, and that the offenses were committed for the purpose of obtaining blank checks and a checkwriter machine in order to carry out a scheme of writing bad checks, passing them and obtaining money thereby. Appellant and his co-conspirators were virtually observed in New Jersey committing the offenses charged. The police officers had justifiable reason to conclude that the contraband was in defendant's home. "Probable Cause", which is an essential requisite of a valid search warrant, does not impart absolute certainty, but only implies reasonable grounds for belief, and the justice issuing the search warrant is the authority to be satisfied that probable cause exists. *Commonwealth v. Loesel,* 155 Pa. Superior Ct. 461, 38 A. 2d 523. Here, the issuing magistrate was satisfied that probable cause existed, and, therefore, all the evidence was obtained pursuant to a valid search warrant, and was properly admissible.

Judgment of sentence affirmed.