**UNITED STATES of America ex rel. Rudolph E. BOYANCE**

v.

**David N. MYERS, Superintendent.**

Misc. No. 3008.

United States District Court
E. D. Pennsylvania.

July 10, 1967.

Curtis R. Reitz, Philadelphia, Pa., for relator.

Ward F. Clark, Dist. Atty., by Oscar S. Bortner, Asst. Dist. Atty., Doylestown, Pa., for respondent.

## OPINION

LUONGO, District Judge.

Relator, Rudolph E. Boyance, was tried in the Court of Quarter Sessions of Bucks County on indictments Nos. 184 through 189, inclusive, September Term, 1961, charging burglary, larceny, receiving stolen goods, possession of burglary tools, bringing stolen goods into Pennsylvania and conspiracy. One of the indictments (No. 189) related to crimes committed during the night of July 12–13, 1961, the others pertained to crimes committed over a period of several weeks before. After trial by jury and a verdict of guilty on all six indictments, Boyance was sentenced, on December 8, 1961, to concurrent terms of 5 to 10 years on five of the six indictments, no sentence having been imposed on No. 187.

The present amended petition for writ of habeas corpus is before the court following a reversal by the Court of Appeals [1] of this court's dismissal of the

original petition herein (M–3008) for failure to exhaust state remedies. The history of the prior litigation in this matter, in the state and the federal courts, is set out below.[2]

Boyance's claim that his convictions were obtained in violation of his constitutional rights is on two main grounds: (I) the invalidity of a search of his home in the early morning hours of July 13, 1961; and (II) ineffective waiver of his right to counsel at the trial in Bucks County in September 1961.

It has been agreed that no evidentiary hearing on this amended petition for writ of habeas corpus is necessary and that the matter may be decided on the records already made in the state criminal proceedings, in the several habeas corpus proceedings in the state and in the federal courts detailed in footnote 2, supra, and the stipulation of facts filed in the instant proceeding (Document No. 14).

### I. *Illegal Search and Seizure.*

During the night of July 12–13, 1961, Bensalem Township Police Sergeant Michaels and Pennsylvania State Police Sergeant Kutney followed Boyance and several accomplices, observed them while they were committing several burglaries in New Jersey and kept them under surveillance while they transported the fruits of the New Jersey burglaries into Pennsylvania. Following these observations and as a result of them, a search warrant was obtained and the ques-

---

1. United States ex rel. Boyance v. Myers, 372 F.2d 111 (3d Cir. 1967).

2. Judgment of conviction affirmed, Commonwealth v. Boyance, 199 Pa.Super. 204, 184 A.2d 338 (1962); petition for allowance of appeal nunc pro tunc denied April 29, 1964, allocatur docket No. 101–A, Misc. No. 13.

 Petition for writ of habeas corpus, C. P. Bucks Co., No. 1435, December Term, 1963, denied, Commonwealth ex rel. Boyance v. Myers, 13 Bucks County L.Rep. 502 (1963).

 Petition for writ of habeas corpus, C. P. Bucks Co., No. 286, January Term, 1965, denied, Commonwealth ex rel. Boyance v. Myers, 15 Bucks County L.Rep.

223 (1965); 16 Bucks County L.Rep. 132 (1966), aff'd, 208 Pa.Super. 750, 223 A.2d 124 (1966), petition for allowance of appeal denied January 25, 1967, allocatur docket No. 116–A, Misc. No. 15.

 Petition for writ of habeas corpus, E.D. Pa., M–2543, denied, United States ex rel. Boyance v. Commonwealth of Pennsylvania, 219 F.Supp. 12 (E.D.Pa.1963).

 Petition for writ of habeas corpus, E. D.Pa., M–2728, denied December 30, 1964 (unreported), appeal withdrawn March 30, 1965.

 Petition for writ of habeas corpus (the instant proceeding), E.D.Pa., M–3008, denied June 18, 1965 (unreported), reversed, 372 F.2d 111 (3d Cir. 1967); amended petition filed February 15, 1967.

tioned search of relator's home and of an automobile parked in his driveway was made commencing at or about 2:30 a. m. on July 13, 1961. Several items seized during the search of the home and automobile (a checkwriter, blank checks and stubs, and a leather wallet from the home, and two iron bars from the automobile) were introduced in evidence at the state criminal trial. Boyance contends that all of those items were the products of illegal search and his constitutional rights were violated by their use in evidence at his trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961).

Relator attacks the legality of the search on the grounds that (A) there was no authority for the search, and (B) if there was proper authority, the search was unlawfully conducted.

### A. *Authority for the Search.*

#### 1. *Issuance of the Warrant.*

Boyance's home was searched pursuant to a warrant issued by Justice of the Peace Albert Schultz on July 13, 1961.[3] The Information accompanying the warrant set forth, in part:

"Before me, a Justice of the Peace,[4] in and for said County and State, personally appeared Sgt. Lawrence R. Michaels of Cornwells Heights, County and State aforesaid, who being duly qualified, according to law, deposes and says that on or about the 13th day of July, 1961, the following goods and chattels, to wit: Blank Checks, Typewriter, and Check Writer were by some person or persons, feloniously stolen, taken and carried away out of the Volks Motors, Olden Ave., Ewing Twp., Mercer Co., State of New Jersey of the said [blank] and that the said goods and chattels, as the complainant has just and reasonable cause to suspect and believe, and does suspect and believe, are concealed in the 2-story stone & frame house of one Rudolph E. Boyance at 5741 Hulmeville Road, Cornwells Heights County of Bucks and State of Pennsylvania.

"All this contrary to the form of the Act of Assembly in such case made and provided, and against the Peace and Dignity of the Commonwealth of Pennsylvania, and further saith not. [JURAT]

s/Sgt. Lawrence R. Michaels
Deponent"

The Information does not, on its face, contain sufficient factual information to support a finding by the judicial officer that there was probable cause for the issuance of the warrant. Conclusory allegations such as those contained in Sgt. Michaels' Information are insufficient [see Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964);[5] United States ex rel. Campbell v. Rundle, 327 F.2d 153 (3d Cir. 1964); United States ex rel. De Negris v. Menser, 247 F.Supp. 826 (D.Conn.1965), and cases cited therein, aff'd, 360 F.2d 199 (2d Cir. 1966)], but the fact that the information itself is not sufficiently detailed to support a finding of probable cause under Fourth Amendment standards does not termi-

---

3. Some question arose in one of the earlier habeas corpus petitions as to the date on the warrant—July 14. This appears to have been an inadvertent error by the Justice of the Peace since there is no question that the warrant was prepared on the morning of July 13 and later on the same morning was taken to Boyance's home and exhibited to him.

4. The facts typed on the printed form by the Justice of the Peace are underscored.

5. I am mindful of the suggestion of the Fifth Circuit in Davis v. Beto, 368 F.2d 999 (5th Cir. 1966) that Aguilar may not be retroactive. However, Davis dealt with a search predating Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961) which was held not retroactive in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Here, the search and trial post-dated Mapp which made it clear that the exclusionary rule applied to the states. In any event, in view of the conclusions I have reached as to the validity of the search warrant, it has not been necessary to decide the question of retroactivity.

738

nate the inquiry into the validity of the warrant. The required factual support may be furnished by other means. The Fourth Amendment requires only that probable cause be "supported by Oath or Affirmation," it does not require that the support be in writing. Oral testimony as well as affidavit in writing, may serve as the basis for the issuance of a warant under constitutional standards. Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966); Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965), cert. denied, 384 U.S. 980, 86 S.Ct. 1879, (1966); Sparks v. United States, 90 F.2d 61 (6th Cir. 1937). See and compare Rule 41, Federal Rules of Criminal Procedure. Pennsylvania permits the use of oral testimony presented to the judicial officer to support the issuance of a warrant, Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885 (1966), and that procedure satisfies the Fourth Amendment requirement of reasonableness, Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ The testimony [6] presented to the Justice of the Peace by Sgt. Michaels, considered in conjunction with the conclusory allegations in the Information, furnished ample factual support for a finding of probable cause.

■ Generally, in a doubtful or marginal case, a search under a warrant may be sustained where, without one, it would fall. E. g. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In determining whether there was probable cause, only the facts that were before the judicial officer who issued the warrant may be considered. E. g. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964).

■ In the instant case, the Justice of the Peace had before him the testimony of an eyewitness to the commission of a crime who testified that the stolen goods were in the home sought to be searched. That afforded more than a "substantial basis" [Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964)] for the finding that probable cause existed for the issuance of the search warrant if the testimony of that eyewitness was under oath. The testimony here reveals that *after* Sgt. Michaels had related the events of the evening, the Justice of the Peace typed the Information. It was at this

6. Testimony of Sgt. Michaels in an earlier habeas corpus hearing before this court (M–2728), in response to questions by the Assistant District Attorney:
"By Mr. Clark [District Attorney]
 * * * * *
"A I told him [the justice of the peace] I—I wanted a search warrant for Mr. Boyance's property, for his home, and told him—gave him a brief resume on the events that had hapened that night.
 * * * * *
"A I told him that Sgt. Kutney and I had followed Mr. Boyance and Malpass, Roberts and Redd into New Jersey and had observed them performing a burglary and saw them taking objects from a—or, an object from a—one of the places they burglarized, this Volk Motors over in New Jersey, and that I believed it was either a checkwriter or some such type of machine like that, and this is why I wanted the search

warrant; they had returned to Mr. Boyance's home.
"Q Now, what else did you tell the Squire at that time?
"A That we had had information that the four mentioned were—were going out to attempt to get a—a checkwriter and some checks, and this is the reason we had followed them, you know, in the first place.
"Q * * * Prior to going to Squire Schultz's did you have information as to whether or not Mr. Boyance had returned to his home?
"A Yes, sir.
 * * * * *
"A Well, it came from Officer Egly who was staked out near the Boyance home.
 * * * * *
"Q Did you tell the Squire that Mr. Boyance was at his home, had returned from wherever he was?
"A Yes, sir." (N.T. 33–35).

point that the oath was administered.[7] Such a procedure is irregular, but it apparently does not affect the validity of the warrant. "It is of no consequence that the oath was taken after the statements were made, rather than before." Lopez v. United States, 370 F.2d 8, 11 (5th Cir. 1966); cf. Commonwealth v. Beddick, 180 Pa.Super. 221, 119 A.2d 590 (1956), *allocatur denied*. While it is unclear from Sgt. Michaels' testimony whether he swore to the truthfulness of the more detailed oral statements as well as the conclusory Information, from the context of the events before the Justice of the Peace, I am satisfied that he swore to the truth of both (see Gillespie v. United States, supra, where the same problem arose), and there was thus ample basis for the finding of probable cause.

## 2. *Search Incident to Arrest.*

▮ Alternatively, the Commonwealth has urged that there was ample authority for the search of Boyance's home since it was incident to a lawful arrest. The Commonwealth contends that a search may be upheld if incident to an arrest notwithstanding that the search precedes the arrest. Holt v. Simpson, 340 F.2d 853 (7th Cir. 1965). It is not necessary to consider whether that principle is applicable here for the search-incident-to-arrest argument falls for an entirely different reason. Where the purpose of entry is to search and not to arrest, the search cannot later be justified as incident to arrest. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Commonwealth ex rel. Ensor v. Cummings, 420 Pa. 23, 215 A.2d 651 (1966); United States ex rel. McMullin v. Myers, 257 F.

Supp. 812 (E.D.Pa.1966). The right of entry here was predicated upon the search warrant. The extensiveness of the search and its timing with relation to the actual arrests demonstrates that search, not arrest, was the reason for the entry. The fact that the police did not obtain arrest warrants at the same time they obtained the search warrant is further evidence that their purpose in seeking entry into Boyance's home was to search for and to seize fruits of the crimes they had observed being committed, not to make arrests.

## B. *Conduct of the Search.*

### 1. *Nighttime Search.*

The warrant here directed "search in the daytime." The search was made at night. In reversing this court's earlier dismissal of Boyance's petition for writ of habeas corpus, the Court of Appeals ruled:

"The illegal search and seizure claim, if established, is sufficient to require the vacation of petitioner's conviction. The state courts have fully considered this claim and rejected it." United States ex rel. Boyance v. Myers, 372 F.2d 111, 112 (3d Cir. 1967).

▮ I am bound by that ruling to conclude that the state courts have ruled that the limitation in the search warrant did not invalidate the search conducted pursuant thereto.[8] Such a ruling by a state court interpreting its own process and procedure is binding upon the federal courts unless that interpretation violates due process. Cf. United States ex rel. Brown v. Smith, 306 F.2d 596 (2d Cir.), rehearing denied, 306 F.2d 606 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1012, 10 L.Ed.2d

7. "I placed my hand on the Bible and he asked me if the facts contained in the— in the Information were true and correct, to the best of my knowledge, and I replied that they were." (M–2728, page 25).

8. There does appear to be some historical, common law support for limiting service of search warrants to the daytime, see 2 Hale, History of the Pleas of the Crown

113 (1st Amer. ed. 1847); and see Voorhies v. Faust, 220 Mich. 155, 189 N.W. 1006, 27 A.L.R. 706 (1922), but such limitations no longer exist unless specifically provided by statute. Boyance's very able counsel has not cited any Pennsylvania statutory or decisional authority, nor has any been revealed by independent research, outlawing service of search warrants at nighttime.

11 (1963); Ferguson v. Manning, 216 F.2d 188 (4th Cir. 1954); Lundy v. Michigan St. Prison Bd., 181 F.2d 772 (6th Cir. 1950); Kleczka v. Commonwealth of Massachusetts, 259 F.Supp. 462 (D.Mass.1966); Goetz v. Hand, 195 F.Supp. 194 (D.Kan.1960), aff'd, 291 F. 2d 930 (10th Cir. 1961).

I cannot say that state procedure which permits nighttime service of search warrants goes beyond permissible bounds of due process, especially since nighttime service of search warrants is sanctioned under federal law, e. g. Federal Rule of Criminal Procedure 41(c), replacing 18 U.S.C.A. § 620, 40 Stat. 229 (a search warrant "may direct that it be served at any time" provided only that the affidavits supporting such warrant are "positive" that the items sought are in the place to be searched); 18 U.S.C.A. § 1405 (in the case of narcotics law violations, a search warrant may be served at any time of the day or night "if the judge or the United States commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist * * *."); cf. 19 U.S.C.A. § 1595 (customs collectors may obtain warrants to search dwelling houses in the daytime only, but warrants may be issued to search stores or other places day or night); Rev.Stat. 3177 (1878), (collectors may enter in the daytime any building or place where taxable articles are made or kept, and may also enter at night when such places are open at night). The reported decisions under these federal laws have been confined to statutory interpretation; they have not involved constitutional rulings. When nighttime searches have been struck down it has been because of noncompliance with the statutory restrictions placed on such searches and not because of some constitutional prohibition against nighttime searches. See United States v. Merritt, 293 F.2d 742 (3d Cir. 1961) wherein a search warrant issued under the provisions of 18 . U.S.C.A. § 1405, supra, which might have provided for service at any time, directed search "in the daytime." Such warrant was held, as a matter of interpretation of the federal statute, not to support a nighttime search. In the instant case, the ruling of the state courts upholding the service of the search warrant at night does not offend the "community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct," Breithaupt v. Abram, 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957), or "that fundamental fairness essential to the very concept of justice," Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941), or those personal immunities which are " 'so rooted in the traditions and conscience of our people as to be ranked as fundamental' * * * or are 'implicit in the concept of ordered liberty'. * * *" Rochin v. People of California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183, 25 A.L.R.2d 1396 (1952), quoting Mr. Justice Cardozo in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575 (1934) and Palko v. State of Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and is not, therefore, violative of due process.

*2. Forcible Entry of Petitioner's Home.*

Boyance contends, further, that the search of his home was invalid in that forcible entry was made without proper announcement of the authority and purpose of the police.

The testimony of the circumstances surrounding the entry is conflicting and reflects a state of confusion resulting from the presence of police officers from several jurisdictions, state and local. I find from a preponderance of the evidence that the following course of events occurred:

Sgt. Michaels obtained the search warrant while other police proceeded to the vicinity of Boyance's home. At some point prior to entry, Sgt. Michaels gave the warrant to Officer

Aston of the Bensalem Township police. It is not clear whether Aston kept the warrant in his possession or gave it to Trooper Arner of the Pennsylvania State Police. Some police were stationed at the front door, others at the side door, and still others at the back door of the Boyance home. One or more of the police knocked on a door announcing that it was the police seeking admittance. Boyance's wife opened either the front or the side door and admitted the police. At this moment, or immediately thereafter, Sgt. Kutney, who had been erroneously informed in the confusion that Mrs. Boyance had refused admittance to the police, broke in the back door. At the point in time when forcible entry was made by Sgt. Kutney, police who had announced their authority and purpose had already been, or were simultaneously being, admitted by Mrs. Boyance. Sgt. Kutney's forcible entry did not invalidate the lawful entry by the others. United States v. Viale, 312 F.2d 595 (2d Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). The instant case is thus distinguishable from that relied on by relator, United States ex rel. Manduchi v. Tracy, 233 F.Supp. 423 (E.D.Pa.1964), aff'd 350 F.2d 658 (3d Cir.), cert. denied, 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965), where forcible entry was made without proper announcement.

C. *Illegal Search of the Home— Effect.*

■ Even if the search of Boyance's home had violated his constitutional rights, he would not necessarily be entitled to release on habeas corpus. He is presently in custody serving five concurrent sentences imposed on convictions obtained on six indictments. If his conviction is valid as to any of the sentences, the state custody is valid and he is not entitled to release. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934); Ingenito v. State of New Jersey, 238 F.2d 935 (3d Cir. 1956), cert. denied, 352 U.S. 1014, 77 S.Ct. 576, 1 L.Ed.2d 560 (1957).

■ The search of the home turned up a checkwriter, blank checks and a wallet. The checkwriter and blank checks were used in evidence only with respect to the charges contained in indictment No. 189. The wallet related to the charges in No. 184 and *possibly* might have been connected with No. 189. The convictions under indictments Nos. 185 through 188 were obtained without the use of evidence seized from Boyance's home. He argues, however, that if the search of his home is struck down, *all* of the convictions must fall; that although only two indictments are directly effected, the admission of illegally obtained evidence as to two of the indictments was so prejudicial as to constitute a denial of due process in the trial of the six indictments, requiring a setting aside of the convictions on all. This argument is without merit. The convictions in Nos. 185–188 were obtained by evidence that was "overwhelming" [see Smith v. United States, 118 U.S.App. D.C. 235, 335 F.2d 270 (1964)], including the testimony of Boyance's co-conspirators. The use of the wallet, checkwriter and checks in Nos. 184 and 189 were no part of a chain of evidence in the trial on the charges relating to the burglaries in Nos. 185 through 188. There was no possibility of confusion of the charges, cf. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), and the finding of guilt as to two of the six could not have prejudicially persuaded the jury of his guilt as to the remaining charges.

D. *Search of Automobile.*

To prevail in this habeas corpus proceeding on the search and seizure question, Boyance must establish the invalidity of the search of the Roberts automobile, for it was from there that the police obtained the iron bars which were used in evidence as to all six of the indictments. If that search was illegal, the convictions resulting from the use of evidence thus obtained would have to be set aside and Boyance would be entitled to release.

Although the question is not free from doubt, I have assumed that Boyance, by reason of his ownership of the premises, has standing to challenge the search of Roberts' automobile while it was in the Boyance driveway. United States v. Costner, 217 F.Supp. 644 (E.D.Tenn. 1963); cf. Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966); United States v. Konigsberg, 336 F.2d 844 (3d Cir.), rehearing denied, 336 F.2d 853 (3d Cir.), cert. denied, 379 U.S. 930, 933, 85 S.Ct. 327, 13 L.Ed.2d 344 (1964).

 The testimony is not without conflict on the point but it appears, and I so find, that the "search" of Roberts' automobile was with Roberts' consent. Trooper Arner's testimony at the criminal trial can be interpreted as meaning that the police searched the Roberts vehicle very shortly after they entered Boyance's home, i. e. while all the interested parties were still on the premises, but Arner's testimony was not directed specifically to the issue. Sgt. Kutney's testimony at the habeas corpus hearing (M–2728), on the other hand, is specific that after Roberts had been taken to the police station he volunteered that tire irons used in the burglaries were in the trunk of his car. He then gave the police permission to get the tire irons from his car and two police were sent back to the Boyance home and they obtained the items in question from the Roberts car which was still in the driveway. I accept Kutney's testimony on this issue and find that the search of Roberts' automobile was with his permission and consent. Such consent obviates the need for a warrant or other authority for search. See Wren v. United States, 352 F.2d 617 (10th Cir. 1965), cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542· (1966); Davis v. People of State of California, 341 F.2d 982 (9th Cir. 1965); see generally Note, 113 U.Pa.L.Rev. 260 (1964).

Boyance's argument that Roberts' consent is invalid since it was obtained as a fruit of the unlawful search of the home [Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] is, of course, dependent on the illegality of the search of the Boyance home. Since I have concluded that the search of the home was lawful, it is not necessary to consider whether Roberts' consent, and therefore the search of his automobile, were likewise tainted.

## II. *Waiver of Counsel.*

 The second major ground asserted by relator for the grant of the writ is that he did not intelligently and knowingly waive the right to counsel at the criminal trial. In habeas corpus proceedings, the inquiry into the intelligence of waiver is not confined to a review of the record of the alleged waiver made at the time of the trial. The trial record may be supplemented by other evidence bearing on that issue. United States ex rel. Mazewski v. Myers, M–2796, E.D.Pa., Oct. 9, 1964 (unreported), aff'd, 359 F.2d 940 (3d Cir. 1965), rehearing denied, 359 F.2d 941 (3d Cir.), cert. denied, 385 U.S. 845, 87 S.Ct. 89, 17 L.Ed.2d 77 (1966); see Beasley v. Wilson, 370 F.2d 320 (9th Cir. 1966); United States ex rel. Jefferson v. Fay, 364 F.2d 15 (2d Cir. 1966), cert. denied, 385 U.S. 1027, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967). A review of the whole record satisfied me that Boyance knowingly, intelligently and voluntarily waived the right to counsel.

The criminal trial record discloses the following colloquy in open court prior to the selection of the jury:

"MR. BECKERT [District Attorney]:

&ast; &ast; &ast; &ast; &ast; &ast;

"I spoke wih Mr. Boyance in the courthouse today and he advised me that he is not represented by an attorney and that he did not wish an attorney appointed. Before any plea is entered on any of these Bills, I would, respectfully ask the Court to have Mr. Boyance verify that my statement is correct.

"BY THE COURT:

"Q Mr. Boyance, you have heard the statement by the district attorney. Is it true?

"MR. BOYANCE: Yes, that is quite correct.

"THE COURT: You do not have counsel and that you do not wish an attorney to be appointed for you?

"MR. BOYANCE: No, sir, I do not.

"THE COURT: How do you wish to plead?

"MR. BOYANCE: Not guilty.

"THE COURT: I want to make it clear and I am sure you understand that if you wish, we would be happy to appoint an attorney to represent you and to handle your case for you.

"MR. BOYANCE: Yes, sir, I know. I am going to ask the Judge who is going to preside in this case, to advise me in my defense in regard to motions, rules of procedure, and so forth.

"THE COURT: That is understood.

"MR. BOYANCE: I want that in the record, Your Honor.

"THE COURT: Your statement is in the record. I assume that I will be the trial judge and you may be sure that I will do my best to protect your interests to the extent that I legally can. Once again, I will point out that I am willing to appoint an attorney for you.

"MR. BOYANCE: No, sir, *I have a great deal at stake, here,* Your Honor, and *I don't think that an attorney would be competent.* This is nothing against any attorney but *I do think that what I have to fight for is much too important to allow it to be handled by any one else.*

"THE COURT: [Explanation of order of trial].

"MR. BOYANCE: If I may so state, I have studied trial procedure for two months.

\* \* \* \* \* \*

"MR. BOYANCE: \* \* \*

"Your Honor, if I may, I would like to subpoena certain defense witnesses.

"THE COURT: If you will furnish a list of witnesses I will be happy to subpoena them. \* \* \* "

(N.T. 2–4) (Emphasis supplied.)

Relator contends that the rejection of counsel in the foregoing colloquy was based on his belief that the court would appoint only the Public Defender to represent him, and that such appointment would create a conflict of interest since the Public Defender had already been appointed to represent co-defendants who had entered pleas of guilty. Relator contends further that the rejection of counsel was not made intelligently since he had not been asked if he understood the nature of the crimes charged or the possible defenses thereto and because, in fact, he did not realize the potential length of imprisonment which might be imposed upon conviction of all the crimes charged.

Relator points out that prior to the trial in question, he had never appeared in a court of record without an attorney representing him, and that he had been involved in some fifteen criminal charges of varying degrees of seriousness over a period of fourteen years.

"Since his conviction in September 1961, Mr. Boyance has not appeared in court (on appeal from that conviction, in a subsequent federal prosecution [Crim. No. 20914, E.D.Pa.], and in various post-conviction proceedings from both convictions) without an attorney representing him. With but two exceptions, Mr. Boyance has sought appointment of counsel in his many post-conviction applications, although a number of these proceedings were, in the first instance, initiated by him pro se, and the records of many of these proceedings contain documents, pleadings and memoranda of law prepared by him." Stipulation of Counsel (Document No. 14).

Relator argues, from the fact that he had always sought the aid of counsel in all court matters other than the criminal trial in question, that he did not voluntarily waive the right to counsel at that criminal trial. That argument is not at all persuasive. The fact that relator had been involved in numerous criminal charges prior to the trial in question and had always sought the assistance of

counsel demonstrates quite clearly that he was fully familiar with the gravity of criminal charges and the advantages of being represented by counsel in defending against such charges. He was not a wide-eyed innocent, unfamiliar with criminal courts and proceedings. See Verdon v. United States, 296 F.2d 549 (8th Cir. 1961), cert. denied, 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811 (1962). On the issue of intelligence of waiver, I am in complete accord with the conclusion expressed by then Bucks County Court Judge Fullam, now a member of this Court, in his ruling on Boyance's last state habeas petition (16 Bucks County L.Rep. 132):

"[H]e rejected our offer to appoint counsel because of self-esteem and a desire to play the part of a lawyer, and not because of any misunderstanding, or belief that the court would insist upon appointing someone with a possible conflict of interest * * *."

Indeed, I had made a somewhat similar observation one and a half years earlier when relator appeared before me at the hearing on his petition for writ of habeas corpus, M–2728:

"I think Mr. Boyance made abundantly clear during that trial that his case was entirely too important to commit to any attorney, not just a Voluntary Defender, that that is what he fully and confidently believed, that he was much more capable of taking care and of protecting his own interest than of (sic) any attorney." (N.T. 49).

As further evidence that Boyance intelligently and knowingly waived counsel, in another habeas corpus petition filed in this court (M–2543) some two years after the criminal trial, relator's position with respect to waiver of counsel was, as summarized by then District Judge, now Circuit Judge Freedman, 219 F.Supp. 12, 13 (E.D.Pa.1963):

" * * * Indeed, the petitioner does not complain of the failure to appoint

counsel to represent him at the trial. He expressly states that he 'assents to the opinion of the Superior Court of Pennsylvania in that he rejected an offer of the services of the Public Defender at his trial.' (Footnote omitted.) What he argues is that the trial court should have appointed counsel to act as 'amicus curiae' and that although he waived the right to counsel to speak for him, he did not waive the assistance of counsel as 'amicus curiae'. There is, of course, no merit in this contention."

From his extensive experience with criminal charges, I have no doubt whatsoever that relator fully appreciated the nature and the consequences of the charges on which he faced trial. While he may not have known the precise total potential maximum penalties of 149 years imprisonment and fines of $67,000,[9] he was aware that substantial sentences could be imposed. This is sufficient. See Verdon v. United States, supra. It would be unrealistic to require, as a condition of intelligent and knowing action by a defendant, that the maximum penalty on each count on each indictment be totalled by the trial judge and the resulting total announced to the defendant.

Boyance, in his appearances before me, has not impressed me as reliable or credible and I cannot accept as truthful the · explanations and claims he now makes concerning his waiver of counsel. Judge Fullam expressed it well when he said: "His present contentions are based solely upon afterthoughts and wishful thinking."

The petition for writ of habeas corpus will be denied.

The Court expresses its deep appreciation and warm thanks to Professor Curtis R. Reitz of the University of Pennsylvania Law School who, pursuant to court appointment, has performed outstanding service on relator's behalf.

9. The court has accepted the calcluations set forth in the brief of relator's counsel.